CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED
for Harrisonburg
DEC 01 2009
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| THE CINCINNATI INSURANCE COMPANY, a/s/o EJ'S, LLC, <br><br> Plaintiff, <br><br> v. <br><br> TIENDA LA MEXICANA, INC., <br><br> Defendant. | Civil Action No. 5:09-CV-00021 <br><br> **MEMORANDUM OPINION** <br><br> By: Hon. Glen E. Conrad <br> United States District Judge |

This matter comes before the court on the defendant's motions to dismiss pursuant to Rule 12(b)(6), for joinder pursuant to Rule 19, and to compel compliance with Rule 19(c). The parties appeared before the court for a hearing on these motions on November 12, 2009. For the following reasons, the defendant's motions will be denied.

## I. Factual and Procedural Background

On April 13, 2009, The Cincinnati Insurance Co. ("Cincinnati Insurance"), as subrogee of EJ's, LLC ("EJ's"), filed a complaint against Tienda La Mexicana, Inc. ("Tienda") asserting one count of negligence and one count of breach of contract. Cincinnati Insurance is an Ohio corporation with its principal place of business in Fairfield, Ohio. It is alleged that Tienda is a Virginia corporation with its principal place of business in Waynesboro, Virginia.

According to the complaint, EJ's was the owner of a tenant occupied commercial property in Waynesboro, Virginia (the "Property"). Tienda leased a portion of this Property for use as a grocery store through a lease agreement executed March 1, 2003, between Tienda and EJ's predecessor in interest, Hillside Property Management.

Prior to October 4, 2007, Cincinnati Insurance issued a policy to EJ's, insuring EJ's business interests and the Property against loss. On October 4, 2007, a fire originated in the leased space occupied by Tienda, causing fire, smoke, and water damage to the Property. Pursuant to the terms of the policy issued by Cincinnati Insurance to EJ's, Cincinnati Insurance made payments in excess of $75,000 to compensate EJ's for damage to the Property and for business losses. Cincinnati Insurance claims that it is subrogated to the rights of its insured, EJ's, to the extent of the payments it made to EJ's.

As subrogee of EJ's, Cincinnati Insurance asserts a negligence claim against Tienda, arguing that Tienda owed a duty to EJ's to exercise reasonable care in its occupancy of the Property. It claims that the October 4, 2007 fire was caused by the defendant's negligence. Cincinnati Insurance also asserts a breach of contract claim against Tienda. Pursuant to a section of Tienda's lease titled "Insurance," plaintiff argues that Tienda assumed responsibility for any damages it caused to the Property. That section states:

> INSURANCE
> Landlord shall maintain all public or common areas in a condition free from all physical and fire hazards. Landlord shall adequately insure the building and all public or common areas for fire, casualty, hazard, and liability. Tenant shall maintain the demised premises in a hazard-free condition. Tenant shall be responsible for insuring his personal property and he shall be responsible for liability within the demised premises. Tenant will be responsible for any damages to the premises by the following but not limited to: himself, customers, and/or delivery personnel.

Cincinnati Insurance states that Tienda is therefore responsible for the damages caused by the fire and that Tienda breached the lease agreement by failing to compensate EJ's for that damage.

In addition to the paragraph on insurance, the lease also states in pertinent part:

DAMAGES OR DESTRUCTION BY FIRE OR NATURAL CAUSES
If, during the term of this lease, the building on the demised premises is destroyed by fire, natural causes, or other casualty, or so damaged thereby that it cannot be repaired with reasonable deligence [sic] within sixty (60) days, this lease shall terminate as of the date of such damage or destruction. However, if said buildings can with reasonable diligence be repaired within 60 days, said buildings shall be, by Landlord, repaired as quickly as is reasonably possible, and this lease shall remain in full force and effect; provided, however, rent shall be abated for any part of said building which is rendered unfit for occupancy for the period that such unfitness continues.

On May 26, 2009, defendant filed a motion to dismiss the breach of contract claim pursuant to Rule 12(b)(6), a motion for joinder pursuant to Rule 19, and a motion to compel compliance with Rule 19(c). The parties fully briefed the issues before appearing before the court for a hearing on these motions on November 12, 2009. The matter is now ripe for disposition.

## II. Motion to Dismiss for Failure to State a Claim

### A. Standard

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint[.]" Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" Iqbal, 556 U.S. at ___, 129

S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

The plaintiff in this case has attached the lease as an exhibit to its complaint. The court may properly consider this document without converting the motion to dismiss to one for summary judgment. See American Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) (holding that a court may consider certain extrinsic evidence in ruling on a 12(b)(6) motion).

**B.      Discussion**

Tienda contends that dismissal is appropriate in this case because Virginia courts have adopted the implied co-insured doctrine and that, as a matter of law, Cincinnati Insurance is barred from seeking compensation from Tienda. In the alternative, Tienda argues that dismissal is appropriate because the terms of the lease indicate that Tienda is not responsible for the costs of repairing the Property, regardless of whether it negligently caused the fire.

Tienda first argues that the implied co-insured doctrine bars plaintiff's breach of contract claim. Under this doctrine, a lessee is considered to be the co-insured of the landlord in the absence of an express agreement to the contrary, such that an insurer may not pursue compensation from the lessee. See, e.g., Sutton v. Jondahl 532 P.2d 478 (Okla. Civ. App. 1975); Cambridge Mut. Fire Ins. Co. v. Crete, 846 A.2d 521 (N.H. 2004). Tienda argues that this doctrine was implicitly adopted by the Supreme Court of Virginia in Monterey Corp. v. Hart, 224 S.E.2d 142 (Va. 1976).

In Monterey, a landlord brought an action against the executor of a deceased tenant for fire damage allegedly caused by the tenant's negligence. The lease in that case stated that "[l]essee will keep, and at the expiration hereof deliver up, the premises in as good order and condition as the same now are, reasonable wear and tear and *damages by accidental fire excepted*. . . ." 224 S.E.2d at 143 (emphasis added). The issue before the Supreme Court of Virginia was whether the lease absolved

4

the tenant of liability for damage resulting from all fires except where arson was involved, or whether the tenant maintained liability for damages resulting from negligent, reckless and intentional fire.

In its analysis, the Supreme Court of Virginia considered § 55-226 of the Virginia Code, which reversed part of the harsh common law rule pertaining to the tenant's duty to rebuild. Under § 55-226, a tenant is no longer liable for damages if the building is destroyed by fire without fault or negligence on the part of the tenant, "unless there be other words showing it to be the intent of the parties that [the tenant] should be so bound." Va. Code § 55-226. Under the common law, as modified by § 55-226, a tenant is now only liable for damages where it is shown that the damage was caused by his own fault or negligence, unless the lease contains an express provision to the contrary. If, therefore, the lease in Monterey contained an exculpatory clause freeing the tenant from liability for fires caused by her own negligence, then the lease provision would control.

The lease in Monterey, however, contained no such provision. Because no such express language existed, the Court in Monterey instead had to "look to the provisions of the lease as a whole to determine what the parties intended." 224 S.E.2d at 145. The Court began by noting that the lease in that case was a "landlord's lease" and that any ambiguities in it must be resolved in favor of the lessee. Id. at 144. The Court stated that it was unreasonable to believe that the average layman contracting as a lessee would understand the term "accidental fire" to mean "fire not caused by his negligence." Id. at 147. Considering the lease as a whole, then, the Court in Monterey concluded that the effect of the provisions of the lease was to absolve the tenant of any liability for damage caused by fire other than one attributable to the tenant's intentional and unlawful act. Id. at 147.

Instead of establishing the implied co-insured doctrine as it is applied in other jurisdictions,

5

the Court in Monterey held that, under Virginia law, an express provision in a lease freeing a tenant from his common law liability for fire loss due to his own negligence will control. In the absence of an express provision relieving a tenant of liability, a court must look at the lease as a whole to determine the intent and reasonable expectations of the parties.

The approach set forth by the Supreme Court of Virginia in Monterey was applied by the United States Court of Appeals for the Fourth Circuit in Allstate Ins. Co. v Fritz, 452 F.3d 316 (4th Cir. 2006). In that case, the lease at issue stated that "at the expiration of the lease term Tenant shall surrender the premises in as good condition as they were at the commencement of this lease." If the premises were to be destroyed by fire, the lease provided that its term would immediately cease. During the term of the lease, however, "Tenant [was] responsible for . . . all costs for repairs . . . resulting from . . . negligent actions or omissions of Tenant or Tenant's guests." Id. at 318-19. Applying the principles of Monterey, the court observed that the lease in that case did not abrogate negligence liability, but rather explicitly reinforced that liability when it stated that the tenant would be responsible for all repairs resulting from his or her negligent actions. Because the lease expressly affirmed the tenants' common law liability for their own negligence, the court held that the tenants were contractually liable to pay the costs for repairs resulting from the negligently caused fire. Id. at 322.

The court concludes that the lease in the present case contains no express provision relieving the tenant of liability for fires caused it by its own fault or negligence. Although Tienda argues that such an exculpatory provision exists in the lease, the court cannot agree. Tienda points to two provisions: first, that the "Landlord shall adequately insure the building and all public or common areas for fire" and second, that "if said buildings [destroyed by fire] can with reasonable

6

diligence be repaired within 60 days, said buildings shall be, *by Landlord*, repaired. . . ." (Lease Agreement at 4-5) (emphasis added). The import of these provisions is ambiguous at best. More to the point, neither of these provisions is necessarily inconsistent with the explicit language of the lease agreement under the subheading "Insurance," which states that "Tenant will be responsible for any damages to the premises by the following but not limited to: himself, customers, and/or delivery personnel." (Lease Agreement at 4.) The provisions cited by Tienda do not expressly absolve the tenant of liability for fires negligently caused by the tenant. Rather, this case is more akin to Fritz, in that the lease agreement here affirms the tenant's common law liability for fire loss caused by its own negligence. See 452 F.3d at 322.

Cincinnati Insurance has, in this case, asserted that Tienda negligently started a fire. Cincinnati Insurance has also asserted that, under the lease provision stating that "Tenant will be responsible for any damages to the premises by . . . himself, customers, and/or delivery personnel," Tienda is liable for the damages to the Property resulting from the fire. In the absence of a clear provision relieving Tienda of liability for damage caused by its own fault or negligence, the court cannot conclude that Cincinnati Insurance's cause of action for breach of contract fails to state a claim upon which relief can be granted. The defendant's motion to dismiss will be denied.

### III. Motions for Joinder and to Compel Compliance with Rule 19(c)

Tienda argues that, because EJ's is a party to the lease on which the breach of contract claim is based, EJ's is a necessary party and must be joined pursuant to Federal Rules of Civil Procedure 17 and 19. Tienda acknowledges that EJ's is a Virginia corporation, and that as such its joinder would defeat the court's diversity jurisdiction. Tienda argues, however, that dismissal of the action is appropriate pursuant to Rule 19(b) because EJ's is an indispensable party. In support of this

7

assertion, Tienda states that it is contemplating asserting a counterclaim against EJ's for breach of a separate lease provision requiring an abatement of rent. Tienda also argues that, if EJ's has an uncompensated claim, then it is a real party in interest and it may attempt to recover from Tienda in the future.

Rule 17 of the Federal Rules of Civil Procedure states that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). With respect to subrogation actions, the United States Supreme Court has stated: "If the subrogee has paid an entire loss suffered by the insured, it is the only real party in interest and must sue in its own name. If it has paid only part of the loss, both the insured and insurer . . . have substantive rights against the tortfeasor which qualify them as real parties in interest." United States v. Aetna Cas. & Sur. Co., 338 U.S. 366, 380-81 (1949) (internal citation omitted). In its motion for joinder, Tienda argues that EJ's may have an uncompensated claim, either in the amount of the deductible under the policy or any amounts not paid by Cincinnati Insurance. The plaintiff states in its arguments that, to the extent EJ's has any continuing claim against Tienda, it is for the $500 deductible alone. By comparison, the plaintiff seeks compensation from Tienda for damages in excess of $75,000.

Assuming that EJ's is a real party in interest, it is a party who is to be joined in the action, if feasible, under Rule 19(a). See Virginia Elec. & Power Co. v. Westinghouse Elec. Corp., 485 F.2d 78, 84 (4th Cir. 1973). As the parties recognize, however, joinder of EJ's would defeat this court's diversity jurisdiction. On this record, the court concludes that EJ's is not an indispensable party and that the action may proceed in its absence. See Aetna, 338 U.S. at 382 n.19 (stating that, in partial subrogation situation, insured and insurer are not indispensable parties under old Rule 19); Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 117 n.12 (1968) (amendment to Rule 19

did not alter its underlying principles); see also Garcia v. Hall, 624 F.2d 150 (10th Cir. 1980).

Tienda's motion for joinder and to compel compliance with Rule 19(c) will be denied.

## IV. Conclusion

For the foregoing reasons, the court concludes that the defendant's motions to dismiss pursuant to Rule 12(b)(6), for joinder pursuant to Rule 19, and to compel compliance with Rule 19(c) shall be denied.

The Clerk is directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

**ENTER**: This 1st day of December, 2009.

_____
United States District Judge